The case on today's docket is the case of the people of Staten Illinois v. Roberta Albrecht. And we have Ms. Straughn for the opponent and Ms. Sharma for the athlete. And you may proceed, Ms. Straughn. Thank you, Mr. Clerk, Counsel. This is a simple case with one issue. Roberta Albrecht is convicted of cannabis trafficking, and the issue is whether she was denied a fair trial with photos and extensive testimony of a completely unrelated legal cannabis grow operation in California was admitted in this trial. This is an interesting case in that her defense was compulsion. Is that what makes it simple? It's an interesting case. It's unique. It's definitely unique. All the jury had to decide was whether or not that she acted out of her own volition or if she acted under the compulsion of various gangs that, let's see, that she was paying back a debt that her deceased son owed for gambling debts. After her son was killed, she was contacted by a gang who claimed he owed $100,000 in gambling debts and she had to pay it. She couldn't pay it, so they worked out a negotiation that she would instead drive cannabis from California to Illinois for these gangs. The state, of course, assumes, and as anybody would, that she just drives cannabis around for her own fun and for her own benefit. But isn't the state entitled to try to determine or prove that this whole background that you've just indicated didn't have any basis in reality? Absolutely. However, these photographs of the operation in California don't in any way prove or disprove that. They don't? Absolutely not. There was never any connection made between what she is allowed to legally do in California and the cannabis that she had here in Illinois. The state completely failed to make any attempt to link the two things up, other than the supposition that, well, she's got some weed here, she had some weed there, it must all be the same. And you can't have a conviction sustained on the basis of, well, it had to be that way. There's got to be more to it than that. It would have been very simple for the state to have shown that what she was legally doing in California resulted in this same cannabis that was found here in Illinois. It would have been perfectly simple. The first thing they could have done was determine or offer evidence about whether or not this cannabis Well, let's take that. Let's, I want you to try to forget the fact that it's legal in California because nobody was trying to prove whether or not it was legal or illegal in California. Right. That's just what makes it harmful is that it appears to be other crimes evidence. So even taking that out of it. Even taking that out of it, we don't see any possible connection with that bursting your defense of compulsion. I see a possible connection that the state did not tie up and did not make. And ultimately these photographs were far more, even if there was a little bit of relevance in an attempt to disprove her affirmative defense, these photographs and all the associated testimony was so prejudicial. Unfairly prejudicial. Unfairly prejudicial. Way far beyond what should have been allowed in light of the very small amount of probative effect, probative value that the evidence would have had. And that's what it comes down to. The balancing act just, it's way too probative, way too prejudicial in light of the little probative value that the evidence could have given. And for that reason, it completely tipped the scales and made the jury completely disregard her testimony about what went on here. Since this case comes down to just the credibility determination of whether she did this at her own volition or if she did it under compulsion, that's the ultimate question. And these photographs tipped the scales and they should not have been allowed to do that because of the unduly prejudicial effect they had. So it wasn't just the photographs. It was the evidence, the testimony by the officers who talked about what these photographs had to mean. It was more than just pictures. It's the whole ball of wax associated with it. And that's what made it so prejudicial. Didn't your client make statements that she really didn't understand what she was even, didn't have knowledge of what she was even transporting? Right, that's correct. She knew or she believed that she was hauling something illegal, but she couldn't say for sure what it was. In fact, I think comments were made that it's not powder, it's something like that, that she knew she was doing something she wasn't supposed to be doing. But she didn't know until they actually opened the suitcases what exactly was in there, and they already disproved that. It wasn't a real serious issue in the case, but she told them everything. Once she was caught, she told them everything. This is what I'm doing. This is how I did it. Let me help you make a control. We'll make a delivery. We'll do whatever we can. And attempts were made. They believed her enough that they tried to set that up. So they certainly didn't completely disbelieve what she was telling them to begin with is they attempted to make those things happen and just didn't carry through. Well, I guess they believed that she wasn't in it alone and there had to be other parties involved in this trafficking, but does that mean they believed that there was compulsion involved? It certainly means that they were open to listening to her story. I mean, obviously, when you're carrying 82 pounds of cannabis somewhere, you're probably not doing that for your own entertainment. There's probably other people involved. But since they couldn't make the connection, even though she made all of the offers to attempt to help them with that, that certainly adds some credibility to her story. She's given them all the information she has. Here are the phone numbers. Here's how I do it. This is how many times I've done it. She offered up so much information, and frankly, this story's crazy. It's just crazy enough. It couldn't be true. Who knows? It's certainly not completely out of the realm of possibility with all of the other information that she offered about how the whole situation came to be with this man who was following her, this Thomas King who was in the car following her. The officers testified that they didn't even suspect that he might have had anything to do with it, yet another officer testified that it's not at all strange for what they called the drug mule to have a satellite following them. Those things are completely consistent with her story as well as the one that the state wants us to believe. I mean, nothing points directly to whose story is correct except for a credibility determination. And when the scales are tipped by unfair evidence that is so unduly prejudicial, then she's just not been given a fair trial. And she would ask that you reverse her conviction and offer her a new trial at which these photographs and other evidence are not admitted. Thank you, Ms. Shanahan. I want the opportunity to request Ms. Sharma. Good morning, Your Honors, Counsel. I would have to start by saying it is out of the realm of possibility that her story was true because, yes, she had all these phone numbers and she had these drug hookups and she was going to make this pass over. It didn't pan out just because she says, well, here's these phone numbers and I was going to meet them here. If it doesn't pan out, then it's not true. And, yes, the police investigators did pursue her release, but they had to. How else are you going to prosecute this woman later if she's saying, well, it wasn't my fault, I was forced to do it, and you never fully investigated? I mean, then counsel would be coming back here on appeal saying, well, there was reasonable doubt, there was no sufficiency. It's hard to swallow that photographs of cannabis plants found in a van full of cannabis aren't relevant to the case at hand. Well, I have to say that I wasn't really able to follow real closely the experts talking about the seeds. Do you think there was credible evidence for them to connect the photos that they found offering reasonable proof that those could have been the same plants that were harvested and contained in the food basin? The testimony actually about the seeds and the male and the female, the experts didn't. That all came from the defendant's own mouth.  That was all from the defendant's own mouth, because the purpose of the photographs really wasn't necessarily to prove that the cannabis in the suitcases was produced from the plants that were in the photographs, because they didn't need to prove it. This was a charge for trafficking, not for production and manufacture. The purpose of the photos was to negate this compulsion defense, because the photographs show, they indicate along with Exhibit 15, which was a small note that was found with the photographs, that talks about what equipment. And the defendant conceded this was a handwritten note that she wrote this note. It was part of the book she was writing. It was part of the book she was writing, yes, Your Honor. And this note talks about the equipment that is needed to produce a certain output of cannabis, pricing information, how much a certain amount of cannabis would yield price-wise. And this note, Exhibit 15, corresponded with these photographs. So the photographs, maybe they didn't prove that the drugs in the suitcases came from those plants, but they certainly were probative and relevant of the fact that no one was holding a gun to this woman's head and saying, here, you have to do this. But they're contending that that all related to her legal business of growing medical marijuana in California. And that is their defense. I mean, that's a question of fact. She got on the stand and said, no, these photographs were taken for this book that I'm writing about my experience with the mob. And those plants, I've got a permit for it, and they showed, you know, she's got this California permit for it. The state's expert said, well, the, and this was the record, 572, said, well, the number of plants exhibited in the photographs or the number of plants she's got a permit for could potentially yield the amount of cannabis found in the suitcases. And the expert testified, quote, that the note that was found was consistent with paperwork that we will see when we go in and out of indoor drug growths. So yes, yes, she's saying that this was nothing to do, that these photographs have nothing to do with this, it's my legal, I'm trying to grow for pharmacies, and I'm trying to grow for, I'm a caretaker for other people. The state is saying, that's crap, that's not true, this is all connected. That's a question of fact for the jury. That's, there's two stories here, and these photographs are evidence that is admissible for the jury to decide whether they believe the defendant or whether they don't believe it. It certainly has a tendency to disprove this compulsion defense, and a tendency to disprove a consequential fact is all that is needed for evidence to be admissible. Counsel talked about, beyond that, the photographs were more prejudicial than they were probative. Well, for one thing, they need to be substantially more prejudicial than they were probative. This is a case where there were 80 pounds of cannabis found in these suitcases. The jury saw these suitcases, and they heard about all this cannabis. Some photographs of cannabis plants aren't going to be prejudicial in context of this case. The defendant isn't in any of these photographs. There's no images of cannabis use. They're just plants. So in a context of this case, it can hardly be ceded that these photographs were more prejudicial. Was there evidence that she did have this license to grow in California? I believe so. So they could believe that she was legitimate in that endeavor, but still believe that the photos could be related to the illegal drug marijuana that she was using. Yes, Your Honor. I do believe that there was proof that she did have this permit, but certainly the state could also believe that she was using this legal permit for illegal purposes and growing these drugs and selling them, bringing them into Illinois, that's illegal. But that's, again, besides the point is the state wasn't necessarily trying to prove beyond a reasonable doubt that she grew the cannabis in the suitcases. The photographs were only there to prove that, hey, it's not some coincidence that these photographs are in this van. It shows that she wasn't being forced. Unless she was planning on working on her book at some point at some rest stop while she was on her way to Illinois, there's no reason for those photographs to have been in the van unless there's some sort of connection. Whether the connection is direct, that the plants produce the cannabis or not, it's irrelevant. Well, what is the indirect relevance? The indirect relevance is they show that there is some illegal activity. Perhaps the photographs she had brought them to show whoever she was selling, look, this is the operation I've got in California. Here are the plants. Here's what it looks like. Certainly the note, Exhibit 15, tended to show that there's some kind of profit that she's growing these plants for, that it's not just for her own medicinal use. And she had the opportunity to say, well, no, the no is because I'm trying to sell it legally in California and I've got this permit and that's fine. But these still are issues of fact that need to be determined by the jury. The jury could very well have concluded that the plants in the photographs did not produce the cannabis in the suitcases, but at the same time, the plants in the photograph indicate she's operating some kind of illegal operation, that this isn't compulsion. Otherwise, why are they there? What is the purpose of these plants in a van full of cannabis? And that is the whole point of that indirect connection. Or they could have thought, yes, these plants produce. And there was testimony, as I said, an expert did say that the photographs, I believe it was she had a permit, I believe, for 100 plants, and there was some testimony that one plant could produce one pound of cannabis and there was about 80 pounds of cannabis that was found in the car. So there was testimony that the jury could have used to infer that she had grown and brought those plants from California to Illinois. So what counsel says, the state didn't even attempt to make a connection, that's simply not true. So for those reasons, Your Honor, we would ask that you would affirm the defendant's conviction. Thank you, Ms. Sharma. Ms. Strawn, rebuttal. I just want to make a few points. I think it's important to realize that there actually was not an expert in this case. This was Master Sergeant Dowdy who was part of the investigation of the whole thing. He's the one who offered testimony about a plant can make up to one pound. Well, he could be an expert and just not a retained expert. Yes, he wasn't testifying as an expert. He was offering testimony from his experience. But a lot of those things probably should not have been admitted in the first place, like this business about the note. We find a lot of that in drug houses. He kind of overstepped his bounds as an actual witness. Is there an objection with respect to that? Of course not, because that would make things a lot easier. But there are a lot of holes in the sorts of things that he offered, like the testimony about one plant can produce one pound. And I believe he says the DEA provides that information. There's no information given on one pound how often, every other weekend, or does it take two years? We have no information about that at all. We do know that she was not given her grow permit until July of 2008, and this all happened in the spring of 2009. So you can't really consider those hard and fast pieces of evidence that necessarily refute what she offered, which was each plant will produce up to four ounces of products in a certain amount of time, because you're not comparing apples to apples here. The information is not parallel. It's not complete at all. So that's something to keep in mind when analyzing what his information actually said. And as I meant to say earlier, but I seem to have gotten off track with it, that the best way to have proven this, if their point was to disprove the idea that she was acting on a compulsion, would have been simply proving this was not medicinal marijuana. It would have been perfectly simple to have done that. What if they were male plants? It would have been perfectly easy for the forensic scientist to have told us that, but they didn't offer that evidence. That would have completely refuted or established one way or the other whether or not it even could have been the kind of marijuana that she was growing out there. And another point that the state makes is these pictures prove that she was doing something illegal. No, they don't. Not at all. What she was doing in California, perfectly legal. There was no evidence at all to show that she was producing more than she was allowed to do, that she's not allowed to profit from this, that her notes mean anything other than, if I invest this kind of money into this sort of operation, I can make this much money selling to medical marijuana pharmacies. There's no evidence to disprove any of that. But the connotation is certainly there, and in Illinois we certainly believe that if you've got a big, huge hydroponic grove, as Sergeant Dowdy explained, that you're doing some serious business, of course that's a connotation. That's why the state presented the information in the first place. Unfortunately, that's not really a fair presentation of evidence in this case because she wasn't doing anything illegal in California, but the presentation of it here in an Illinois case certainly made her look like she was. And when this case comes down to just credibility, whether you believe her or don't believe her, you can't allow that kind of error to interfere without analyzing what kind of damage it could have done. And certainly in this case, it could have been enough to have changed the jury's mind about who to believe when we have almost no evidence other than supposition on the state's part and the defendant's explanation of what she did. And that's just not enough to prove her guilty beyond reasonable doubt if you take away that evidence. So I should ask that you reverse your conviction and forward her to trial. Thank you. Thank you for your briefs and arguments.